# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * *
SHERRY LERWICK, legal          *
representative of a minor child, *
B.L.,                          *          No. 06-847V
                               *          Special Master Christian J. Moran
          Petitioner,          *
                               *
v.                             *          Filed: April 16, 2014
                               *
SECRETARY OF HEALTH            *
AND HUMAN SERVICES,            *          damages, award of compensation
                               *          on interim basis, reconsideration
          Respondent.          *
* * * * * * * * * * * * * * * * * * * *
```

<u>Curtis Webb</u>, Twin Falls, ID, for petitioner;
<u>Darryl R. Wishard</u>, United States Dep't of Justice, Washington, DC, for respondent.

PUBLISHED DECISION, AFTER RECONSIDERATION,
<u>AWARDING COMPENSATION ON AN INTERIM BASIS</u>[1]

Sherry Lerwick established that a dose of the diphtheria-tetanus-acellular pertussis (DTaP) vaccine harmed her son, B.L. As such, she is entitled to compensation through the National Childhood Vaccine Injury Compensation Program (42 U.S.C. § 300aa-10 through 34 (2006)). <u>Lerwick v. Sec'y of Health & Human Servs.</u>, No. 06-847V, 2011 WL 4537874 (Fed. Cl. Spec. Mstr. Sept. 8, 2011) (Ruling on Entitlement).

---

[1] Pursuant to a February 24, 2014 order, the child's name has been redacted. The parties may request additional redactions pursuant to 42 U.S.C. § 300aa-12(d)(4)(B); Vaccine Rule 18(b). In the absence of an additional request for redaction, the decision will be posted in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002).

Although the parties have agreed upon the amount of compensation for some items, the parties have not reached an agreement on everything.  Ms. Lerwick, preferring not to wait until all issues are resolved, has requested an award of compensation on an interim basis.  See Pet'r's Mot. for Decision Awarding Interim Compensation (Pet'r's Mot.), filed Oct. 24, 2013.  The Secretary opposed this motion.

A decision, originally issued on February 7, 2014, and re-issued in redacted form on February 24, 2014 ("original decision"), granted Ms. Lerwick's motion.  She was awarded $325,000.00 as compensation on an interim basis.

The Secretary filed a motion for reconsideration of the original decision.  This motion was granted to the extent that the motion requested that the original decision be vacated.  Whether the Secretary was entitled to any additional relief (a substantive change in outcome) was deferred until Ms. Lerwick responded to the motion for reconsideration.  Order, filed Mar. 4, 2014.

Ms. Lerwick submitted her response.  The parties' additional arguments have been considered.  For reasons explained below, the original decision is re-instated and Ms. Lerwick is awarded $325,000.00 in compensation on an interim basis.[2]  This award is intended to deliver some compensation to Ms. Lerwick as quickly as possible in accord with one purpose of the Vaccine Act: "quickly, easily, and with certainty and generosity."  H.R Rep't 99-908 at 3, quoted in Cloer v. Sec'y of Health & Human Servs., 675 F.3d 1358, 1362 (Fed. Cir. 2012) (en banc), aff'd sub nom., Sebelius v. Cloer, 133 S.Ct. 1886 (2013).

Background[3]

B.L. was born in April 2004.  In August 2004, he received a set of vaccinations including the DTaP vaccine.  Within a few days, B.L. started having seizures.  He was diagnosed as suffering from acute disseminated encephalomyelitis (ADEM).  The ADEM has caused B.L. to be "profoundly

---

[2] The March 4, 2014 order made the original decision "void for all purposes."  Vaccine Rule 10(e)(3)(A).  Thus, this decision addresses all the Secretary's arguments, regardless of whether she made them in her response to Ms. Lerwick's motion or in the Secretary's motion for reconsideration.

[3] The Secretary's motion for reconsideration did not challenge the material set forth in the "Background" section.  Thus, it is repeated, with minor changes, from the original decision.

delayed in all areas. He has problems taking nourishment. He has little ability to communicate. He cannot sit up or walk. He continues to have seizures." Ruling on Entitlement, 2011 WL 4537874, at *10. The limits of B.L.'s abilities are vividly depicted in a video filed as exhibit 126.

B.L. receives much more assistance than a typical nine-year-old. "He is dependent on others for all of his daily living needs." Exhibit 107 at 5. He uses "a multi-position seating chair, a walker, stroller, crawler, . . . and a bath chair." Id. He requires a number a daily medications. See id. at 9. The State of California, through a program called Medi-Cal Early Periodic Screening, Diagnosis, and Treatment, provides a licensed vocational nurse for 170 hours per month. A different program, the Inland Regional Center, provides another 30 hours per month of care by a licensed vocational nurse. The California Department of Social Services also funds a person (in this case, Ms. Lerwick, herself) to provide 195 hours of non-licensed care to B.L. Id. at 1. B.L.'s school system also assists in B.L.'s care when he attends school.

Ms. Lerwick claimed that the DTaP vaccine caused B.L.'s ADEM. See Petition, filed Dec. 12, 2006. The Secretary disagreed and the case went to a hearing on entitlement. Ms. Lerwick was found to have established causation. Ruling on Entitlement, 2011 WL 4537874 at *1. The parties began to determine the amount of compensation to which Ms. Lerwick is entitled. See 42 U.S.C. § 300aa-15(a) (listing five categories of compensation).

The process for quantifying damages is often laborious, especially in cases with a brain-injured child. A starting step is obtaining updated documents describing the child's status. Typical sources include medical records and individualized education plans. Both parties also retain life care planners, either jointly or separately. A significant task of life care planners is to obtain information from the treating doctors about the child's future abilities and future needs. Those factors, in turn, influence the amount of compensation awarded for impaired earning capacity, future pain and suffering, and future unreimbursed expenses.

Projecting a person's abilities, their medical needs, and their anticipated emotional distress decades into the future is not easy. Nevertheless, the parties routinely overcome the difficulties in making those estimates. In the vast majority of cases in which special masters find the petitioner is entitled to compensation, the parties reach an agreement regarding the amount of compensation. The frequency of settlement is a great accomplishment of the Vaccine Program.

For B.L., the parties followed the same process and nearly reached the same result, a complete resolution.  For medical expenses incurred but not reimbursed through August 30, 2013, the parties agreed to $75,000.00.  For pain and suffering (both past and future), the parties agreed to $250,000.00.  For B.L.'s lost earning capacity, the parties agreed to $635,424.00.  These three agreed-upon items are the subject of Ms. Lerwick's pending motion for compensation on an interim basis.

The parties have not agreed to the amount of unreimbursable future medical expenses.  Within this category, two items remain unresolved.  Ms. Lerwick claims B.L. currently needs 24-hour supervision of a licensed nurse.  The Secretary argues that 24-hour care is not necessary.  Additionally, the Secretary proposes that funding for future expenses should assume that when B.L. is 25 years old and his mother is 65, he will live in a residential facility.  Ms. Lerwick prefers that he live at home.  See Pet'r's Mot. for Partial Summary Judgment, filed July 12, 2013; Resp't's Opp'n to Pet'r's Mot. for Partial Summary Judgment, filed July 29, 2013.

Because of the dispute over future medical expenses, a hearing in damages was held across three days in September 2013.  The witnesses included Dr. Ramon Sankar, B.L.'s treating neurologist, and Dr. Perry Lubens, a neurologist whom the Secretary retained to examine B.L.

After the hearing, Ms. Lerwick filed the pending motion.  She requests a decision awarding compensation for the three undisputed items.  A reason for Ms. Lerwick's request is that she expects to lose funding from California.  She testified that after her divorce from B.L.'s father becomes final and he pays child support, the child support will limit (or disqualify) her receiving funds from California.[4] Pet'r's Mot. at 5.  The Secretary opposes her request.  Resp't's Resp. to Pet'r's Mot. for Decision Awarding Interim Compensation (Resp't's Opp'n), filed Dec. 9, 2013; Resp't's Mot. for Reconsideration, filed Feb. 24, 2014.

<u>Analysis</u>

Although not framed precisely in these terms, the parties' submissions raise two issues.  First, whether special masters possess the authority to award compensation on an interim basis.  Second, assuming that special masters have this authority, whether exercising this authority for Ms. Lerwick is appropriate.  The

---

[4] The Secretary has not challenged the accuracy of this testimony.

Secretary's motion for reconsideration has focused on the former question, an issue about legal authority.

## I.      Authority

In advancing her argument that special masters have the authority to award compensation on an interim basis, Ms. Lerwick draws on two sets of cases from the Federal Circuit.  In the first set of cases, the Federal Circuit stated that the Vaccine Act authorizes special masters to issue decisions awarding attorneys' fees and costs on an interim basis.  Shaw v. Sec'y of Health & Human Servs., 609 F.3d 1372 (Fed. Cir. 2010); Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343 (Fed. Cir. 2008).  Ms. Lerwick maintains that since special masters may issue more than one decision awarding attorneys' fees and costs, special masters may issue more than one decision awarding compensation.

The other set of cases from the Federal Circuit presents examples in which the Federal Circuit instructed the Court of Federal Claims to issue judgments awarding compensation on an interim basis.  In both cases, the Federal Circuit issued its ruling in a non-precedential order.  Order, filed May 16, 2013, at 7, Tembenis v. Sec'y of Health & Human Servs., No. 2013-5029 (Fed. Cir.), ECF # 28; Order, filed June 13, 2012, at 2, Heinzelman v. Sec'y of Health & Human Servs., No. 2011-5127 (Fed. Cir.), ECF # 28.

In her original response to Ms. Lerwick's motion, the Secretary contended special masters lack this authority.  "The Vaccine Act does not contemplate multiple decisions and multiple judgments.  Legal authority for interim awards of any kind does not exist in the statute."  Resp't's Opp'n at 2.  The problem, as the Secretary recognized, is "these arguments have largely been rejected in the two non-precedential Federal Circuit orders that petitioner cites."  Id.

The Secretary's motion for reconsideration takes a different tact.  The Secretary argues that the decision should identify a statutory basis for awarding compensation on an interim basis.  Resp't's Mot. for Recons. at 2-3 (citing, among other cases, Patton v. Sec'y of Health & Human Servs., 25 F.3d 1021, 1027 (Fed. Cir. 1994)).

The relevant portion of the Vaccine Act provides that a special master shall issue "a decision on such petition with respect to whether compensation is to be provided under the Program and the amount of such compensation."  Section 12(d)(3).  The Secretary emphasizes that the use of the indefinite article "a" in the

phrase "a decision" means that Congress intended that special masters issue only a single decision. Resp't's Mot. for Recons. at 3.

This argument misses its mark. In a statute, the use of an indefinite article ("a" or "an") can mean "one or more." In contrast, the use of the definite article ("the") usually suggests a single item. See Colorado v. Sunoco, Inc., 337 F.3d 1233, 1241 (10th Cir. 2003) (interpreting the Comprehensive Environmental Response, Compensation and Liability Act). The Federal Circuit has used the same guideline in construing patents. See Sandisc Corp. v. Kingston Technology Co., Inc., 695 F.3d 1348, 1360 (Fed. Cir. 2012). The Court of Federal Claims has also distinguished indefinite articles from the definite article when interpreting a contract provision. See Boeing Co. v. United States, 75 Fed. Cl. 34, 43 (2007) ("If more than one such official were contemplated, the indefinite articles 'an' or 'a' should have been used."). While neither Colorado, Sandisc, nor Boeing considered the specific language found in section 12(d)(3) of the Vaccine Act, these cases are persuasive precedents for rejecting the Secretary's argument that a special master may issue one, and only one, decision awarding compensation on an interim basis.

Since section 12(d)(3) does not resolve the question of whether special masters are authorized to issue two or more decisions awarding compensation, guidance can be sought from the four Federal Circuit decisions mentioned above. Figueroa v. Sec'y of Health & Human Servs., 101 Fed. Cl. 696, 697 (2011) ("this court must refrain from a de novo interpretation of the statutory text if binding precedent has already provided an interpretation of this section of the Vaccine Act"), rev'd on other grounds, 715 F.3d 1314 (2013). In two precedential cases, Avera and Shaw, the Federal Circuit has stated that special masters have the authority to award attorneys' fees and costs on an interim basis. In two other cases, Heinzelman and Tembenis, the Federal Circuit endorsed multiple decisions awarding compensation, albeit in non-precedential orders.

To start with the precedential decisions, the genesis of interim decisions was the Federal Circuit's ruling in Avera. The Federal Circuit stated "[t]he statute permits . . . awards" of attorneys' fees and costs on an interim basis. 515 F.3d at 1352.

After Avera opened the door to awards of attorneys' fees and costs on an interim basis, the next issue was the appealability of those decisions. The Court of Federal Claims held that decisions awarding only part of the requested fees were not final decisions that could be subject to a motion for review. Shaw v. Sec'y of Health & Human Servs., 88 Fed. Cl. 463 (2009). Mr. Shaw appealed the Court's

holding that it lacked jurisdiction to entertain his motion for review to the Federal Circuit.

The Secretary's position was that the Court correctly held that the Vaccine Act authorized a motion for review only after the special master issued a "final" decision and a decision awarding attorneys' fees and costs on an interim basis was not a final decision. In support of this position, the Secretary raised the possibility of multiple decisions and multiple appeals: "Vaccine Act cases already have two potentially appealable decisions – one on the issue of entitlement to compensation, if any, and another on final fees and costs. Shaw's position here, if adopted, would result in at least three – if not more – potentially appealable decisions in every Vaccine Act case." Brief for Respondent-Appellee at 15 n.9, Shaw v. Sec'y of Health & Human Servs., 609 F.3d 1372 (Fed. Cir. 2010) (No. 2009-5117), 2010 WL 341595. The Secretary also presented arguments that allowing appeals of decisions awarding attorneys' fees and costs on an interim basis would interfere with the quick and efficient processing of cases within the Vaccine Program. Id. at 17-20, 2010 WL 341595; see also Shaw, 609 F.3d at 1374 (summarizing the government's arguments).

The Federal Circuit rejected the Secretary's arguments. It held a "Special Master's grant or denial of interim attorneys' fees is a decision on compensation and as such it is reviewable by the Court of Federal Claims." Shaw, 609 F.3d at 1376. The Federal Circuit also disagreed with the Secretary's contention regarding delaying the processing of cases, stating this assertion "seems to be more of an attack on the availability of interim fees than their reviewability." Id. at 1377.

Thus, special masters have consistently interpreted Avera and Shaw to authorize them to issue decisions awarding attorneys' fees and costs on an interim basis. See Crutchfield v. Sec'y of Health & Human Servs., No. 09-39V, 2011 WL 3806351, at *5 (Fed. Cl. Spec. Mstr. Aug. 4, 2011) (collecting cases); see also Decision, issued May 26, 2010, 2010 WL 2594109 (awarding interim attorneys' fees and cost in amount which respondent did not object). Although the Secretary acknowledges this binding precedent, the Secretary argues that decisions awarding attorneys' fees are different from decisions awarding compensation. The primary difference is that petitioners must file an election, accepting or rejecting a judgment awarding compensation for injuries, but they do not need to submit an election for judgments awarding attorneys' fees and costs. See Mot. for Recons. at 3-7; Resp't's Resp. at 2-3.

The process for electing to accept or to reject a judgment is an unusual aspect of Vaccine Program procedure.  A special master issues a decision awarding compensation.  42 U.S.C. § 300aa--12(d)(3).  Each party possesses the right to file a motion for review, which, if filed, is assigned to a judge of the Court of Federal Claims.  42 U.S.C. § 300aa-12(e)(1).  If neither party files a motion for review, the clerk enters a judgment in accord with the special master's decision.  Id. § 12(e)(3).

Once there is a judgment, there are two options available.  If, and only if, a party has filed a motion for review, a party may appeal to the Federal Circuit.  Id. § 12(f); Mahaffey v. Sec'y of Health & Human Servs., 368 F.3d 1378 (Fed. Cir. 2004) (denying request for direct appeal to Federal Circuit).  An appeal to the Federal Circuit is unusual.

The second alternative is more common.  The petitioner, and only the petitioner, possesses an option to accept the judgment or to reject the judgment regarding the petitioner's compensation.[5]  The petitioner's election to accept or to reject the judgment determines whether the petitioner may pursue a lawsuit against either the vaccine manufacturer or administrator in civil court.  Accepting the judgment prevents further litigation and rejecting a judgment permits a lawsuit against the vaccine manufacturer or administrator.  42 U.S.C. § 300aa-21(a).

The process for an award of attorneys' fees and costs is largely the same.  The special master issues a decision.  The decision is subject to a motion for review.  The combined effect of the special master's decision and the review by a judge of the Court of Federal Claims, if any, is the basis for a judgment.  Provided there was a motion for review, this judgment may be appealed to the Federal Circuit.  For an example of a case demonstrating this procedural sequence, see Masias v. Sec'y of Health & Human Servs., 634 F.3d 1283, 1285 (Fed. Cir. 2011).  However, once there is a judgment, the similarities between judgments awarding compensation and judgments awarding attorneys' fees and costs end.  Petitioners are not required to file an election to accept or to reject the judgment awarding them attorneys' fees and costs.  Saunders v. Sec'y of Health & Human Servs., 25 F.3d 1031, 1034-35 (Fed. Cir. 1994).

In arguing that special masters lack the authority to issue decisions awarding compensation on an interim basis, the Secretary emphasizes the petitioner's

---

[5] If there were an appeal to the Federal Circuit, the petitioner files the election "after the appellate court's mandate is issued."  42 U.S.C. § 300aa—21(a).

obligation to elect to accept or to reject judgment, particularly in her motion for reconsideration.  The Secretary suggests that a petitioner may accept a judgment awarding compensation on an interim basis but may reject a subsequent judgment awarding compensation on a final basis.  Such a divided result, the Secretary seems to maintain, would permit the petitioner to pursue additional compensation from a vaccine manufacturer or administrator.  Resp't Mot. for Recons. at 4-6.

Despite additional consideration, the Secretary's arguments regarding the need for an election remain unpersuasive.  The Secretary has cited no authority that a petitioner may (a) accept a judgment awarding compensation on an interim basis, (b) reject a judgment awarding compensation on a final basis, and, then, (c) proceed to recover additional compensation from a vaccine administrator or manufacturer in a separate litigation.  The lack of authority is understandable because the situation has never occurred --- a petitioner has never received an interim award of compensation.  Nevertheless, it is easy to imagine a judicial official holding, as a matter of law, that a petitioner's acceptance of a judgment awarding compensation on an interim basis automatically carries with it an implied acceptance of a judgment awarding compensation on a final basis.[6]

The Secretary's arguments about the obligation for an election repeat arguments that the Secretary unsuccessfully presented to the Federal Circuit in Heinzelman and Tembenis.  In Heinzelman, the special master had found that the petitioner was entitled to compensation, which includes compensation for her lost earning capacity.  See 42 U.S.C. § 300aa—15(a)(3)(A).  The Secretary had requested an offset of $316,000.00, because Ms. Heinzelman would receive payments from Social Security Disability Insurance (SSDI).  The special master held that an offset was not required and the Court of Federal Claims agreed. Heinzelman v. Sec'y of Health & Human Servs., 98 Fed. Cl. 808, 815-17 (2011).

The Secretary appealed the (one) judgment of the Court of Federal Claims to the Federal Circuit.  At the Federal Circuit, the single issue concerned the SSDI offset.  Heinzelman v. Sec'y of Health & Human Servs., 681 F.3d 1374 (Fed. Cir. 2012).

Shortly before oral argument was scheduled, Ms. Heinzelman filed a motion requesting partial summary affirmance.  She wanted to receive a judgment for the

---

[6] As discussed below, Ms. Lerwick has disclaimed any intent to reject the forthcoming judgments awarding her compensation.

amount of damages that the SSDI offset did not affect.  The Secretary opposed this request, saying "Petitioner identifies no apposite authority for providing relief in these circumstances, and no such authority exists."  Resp't-Appellant's Opp'n to Pet'r's Mot. for Partial Summary Affirmance at 2, Heinzelman v. Sec'y of Health & Human Servs., No. 2011-5127 (Fed. Cir.), ECF # 23.  The Secretary referred specifically to the need for an election:

> Petitioner is asking the Court to construe these provisions to permit multiple judgments, and potentially multiple elections of remedies --- something the Vaccine Act does not contemplate. . . . Under petitioner's approach, an individual could conceivably elect to accept a partial compensation award embodied in one judgment but reject a subsequent judgment and attempt to pursue a civil action against the vaccine administrator or manufacturer for damages associated with the rejected judgment.  This fractured and convoluted process is inconsistent with the Vaccine Act's scheme for a single election of remedies after final judgment is entered.

Id. at 3-4.

In regard to the merits of the appeal, the Federal Circuit held that an offset was not required and affirmed the judgment of the Court of Federal Claims.  The Federal Circuit did not address Ms. Heinzelman's pending motion for partial affirmance in its reported opinion.  Heinzelman, 681 F.3d 1374.

The Federal Circuit's ruling on Ms. Heinzelman's motion occurred in a non-precedential order issued on the same day as its opinion.  The Federal Circuit granted the motion and ordered that "[t]he Court of Federal Claims shall enter a final judgment in Heinzelman's favor consistent with its June 28, 2011 judgment, but less the $316,000 at issue in this appeal.  Given our decision on the merits of Petitioner's appeal, . . . judgment with respect to the contested amount will become final upon issuance of the mandate."  Order, filed June 13, 2012, at 2, Heinzelman v. Sec'y of Health & Human Servs., No. 2011-5127 (Fed. Cir.), ECF # 28.  Later, the Federal Circuit clarified this order, stating "it is our intention to affirm the entire monetary award in the Petitioner's favor, to be finalized in stages."  Order, filed July 18, 2012, at 2, Heinzelman v. Sec'y of Health & Human Servs., No. 2011-5127 (Fed. Cir.), ECF # 31.

In accord with these instructions, the Clerk's Office of the Court of Federal Claims issued two judgments in her case: one on July 23, 2012, for the undisputed amounts and the other on August 7, 2012, for $316,000.00.  Docket Sheet, <u>Heinzelman v. Sec'y of Health & Human Servs.</u>, No. 07-01V (Fed. Cl.), ECF # 123, 126.  Therefore, the outcome of <u>Heinzelman</u> shows that the Court of Federal Claims may issue two judgments awarding compensation to a petitioner, despite the petitioner's need to elect to accept those judgments.

A similar, but not identical, process happened in <u>Tembenis</u>.  Once again, the parties disputed one item of compensation, specifically, whether the estate of a child who died from a vaccine-related injury was entitled to recover compensation for the money that the child would have earned if the child had not died.  After the Court of Federal Claims awarded this compensation, the government appealed to the Federal Circuit.  And again, the petitioners-appellees at the Federal Circuit filed a motion requesting a summary affirmance of the uncontested amounts.

In opposing the Tembenis' motion, the Secretary again referred to obligation to make an election pursuant to section 21(a).  The Secretary argued the Vaccine Act "contemplates a single choice of compensation award made by the [Court of Federal Claims] or a civil action for damages.  It does not contemplate some combination of the two."  Resp. to Pet'rs-Appellees' Mot. for Partial Summary Affirmance, filed Feb. 12, 2013, at 2, <u>Tembenis v. Sec'y of Health & Human Servs.</u>, No. 2013-5029 (Fed. Cir.), ECF # 13.

The Federal Circuit granted the motion for partial summary affirmance.  The Federal Circuit did not see the obligation for an election as an impediment.  The order stated:

> The language of § 21(a) is consistent with the ability to make an election accepting the judgment prior to the completion of the government's appeal.  Section 21(a)'s only operative limitation is that the election must be made "after judgment has been entered by the United States Court of Federal Claims," but not more than 90 days after the date of the final decision in the case.

Order, filed May 16, 2013, at 5, <u>Tembenis v. Sec'y of Health & Human Servs.</u>, No. 2013-5029 (Fed. Cir.), ECF # 28.  The Federal Circuit also rejected the possibility of inconsistent elections, stating "once a petitioner has elected to accept the judgment, he or she has accepted it for all compensation purposes relating to that

petition." <u>Id.</u> at 6.  Moreover, to advance the payment for the undisputed portions of compensation, the Federal Circuit shortened the amount of time for any petition for rehearing "so that the matter may promptly be transmitted back to the Court of Federal Claims." <u>Id.</u> at 7.  Consequently, the reasoning in <u>Tembenis</u> further supports a holding that special masters may issue two decisions awarding compensation to a petitioner.[7]

The Federal Circuit's orders in <u>Tembenis</u> and <u>Heinzelman</u>, as non-precedential rulings, do not bind special masters.  <u>See</u> Fed. Cir. Rule 32.1. However, the orders represent the conclusions of five judges of the appellate tribunal responsible for establishing the binding interpretation of the Vaccine Act. <u>See</u> <u>Althen v. Sec'y of Health and Human Servs.</u>, 418 F.3d 1274, 1280 (Fed. Cir. 2005).  Additionally and importantly, the reasoning in the orders – particularly <u>Tembenis</u> – retains an ability to persuade.  <u>See</u> <u>Griffey's Landscape Maintenance, LLC v. United States</u>, 51 Fed. Cl. 667, 673 (2001).

Beyond pointing out that <u>Heinzelman</u> and <u>Tembenis</u> are non-precedential orders, the Secretary puts forward other reasons for not following them.  Many of these complaints suggest that the Secretary maintains that the Federal Circuit decided those cases wrongly.  For example, the Secretary asserted she "stands by those arguments" made in opposition to interim awards both previously and in this case.  Resp't's Opp'n at 2.  As such, many of the Secretary's arguments in this case resemble the arguments she made in <u>Shaw</u> that were "more of an attack on the availability of interim fees."  609 F.3d at 1376.

As discussed above, the Federal Circuit in <u>Avera</u> and <u>Shaw</u> stated that special masters possess the authority to issue decisions awarding attorneys' fees on an interim basis.  While the Secretary may continue to dislike that outcome, a special master must follow them.  <u>Friedman v. Sec'y of Health & Human Servs.</u>, 94 Fed. Cl. 323, 332 (2010).  A question that ensued from <u>Avera</u> and <u>Shaw</u> is given

---

[7] In <u>Tembenis,</u> a second judgment was not entered because of the Federal Circuit's resolution of the appeal.  Before the Federal Circuit appeal, the Court of Federal Claims had issued a judgment for $1,084,955.61 on October 22, 2012, in accord with an order of the presiding judge.  Following the Federal Circuit's May 16, 2013 order affirming the non-disputed aspects of the judgment and a series of orders by the judge, the Clerk of the Court of Federal Claims modified the October 22, 2012 judgment on September 12, 2013.  Because the September 12, 2013 judgment awarded all the compensation to which the petitioners were entitled after the Federal Circuit held against them, the Court of Federal Claims did not issue a second judgment regarding compensation.

that special masters have the authority to issue decisions awarding attorneys' fees and costs on an interim basis, do special masters also possess the authority to issue decisions awarding compensation on an interim basis?

The Secretary has identified one potential basis for distinguishing decisions on compensation from decisions on attorneys' fees, the need for an election. The Secretary has argued this point to the Federal Circuit two times. But, the Secretary's arguments have not persuaded the Federal Circuit to limit the availability of interim decisions. If interim awards for attorneys' fees and costs are permitted, then there seems to be no persuasive reason for not allowing interim awards of compensation. One reason Congress created the Vaccine Program was to speed awards of compensation to families whose children were injured by a vaccine. Awarding compensation to those families on an interim basis is in accord with this Congressional purpose.

Consequently, for all these reasons, special masters possess the legal authority to award compensation on an interim basis.[8]

## II.    Discretion

Assuming special masters have the authority to award compensation on an interim basis, the next question is whether a special master should make such an award in a particular case. Here, in her original response, the Secretary raised several factors arguably weighing against an award. These include: (1) a

---

[8]  The original decision stated that if the Secretary wanted to maintain arguments against awards of compensation on an interim basis,

> [I]t is incumbent on the Secretary to file a motion for review and, if necessary, to file an appeal so that judges can resolve the issue. Consistently raising an argument before special masters without taking the steps to obtain a definitive interpretation wastes resources of litigants and special masters. See Nuttall v. Sec'y of Health & Human Servs., No. 07-810V, 2011 WL 5926131, at *2 (Fed. Cl. Spec. Mstr. Nov. 4, 2011) (noting the Secretary's arguments against the award of attorneys' fees and costs on an interim basis).

While the pending motion for reconsideration advances the argument, the present decision does not bind other special masters. Thus, the need for appellate guidance remains.

petitioner's requirement to elect to accept a judgment, (2) a possible change in B.L.'s condition, (3) potential complications in processing Vaccine Act cases, and (4) the possibility of an appeal.  Resp't's Resp. at 3-7.

These issues are discussed below after an examination of Ms. Lerwick's right to compensation.  It is almost a foregone conclusion that she will receive some compensation for B.L.'s ADEM.

The basis for an award of compensation is the September 8, 2011 ruling, which found Ms. Lerwick established that the DTaP vaccination caused B.L.'s ADEM.  The September 8, 2011 ruling, although very important to the outcome of Ms. Lerwick's case, is only an interim ruling and one that could be the subject of appellate review.

Appellate review of special master's decisions begins after the special master issues a "decision."  "Decisions," as the Vaccine Act uses that term, are actions by judicial officials that either award or deny compensation.  42 U.S.C. § 300aa-12(d)(3)(A); Currie v. Sec'y of Health and Human Servs., No. 02-838V, 2003 WL 23218074 (Fed. Cl. Spec. Mstr. Nov. 26, 2003).[9]  By this definition, the September 8, 2011 ruling was not a decision.[10]  Although the outcome favored Ms. Lerwick, it did not award her compensation.  When Ms. Lerwick is actually awarded some amount of compensation, there will be a "decision."  Once there is a decision, the Secretary may exercise her right to challenge the September 8, 2011 ruling by filing a motion for review.  See 42 U.S.C. § 300a-12(e); Heinzelman, 98 at 812 (denying the Secretary's motion for review and holding the special master did not err in allocating the burdens of proof), aff'd in non-relevant part, 681 F.3d 1374 (Fed. Cir. 2012).

Although the Secretary possesses this right, the likelihood of her actually filing a motion for review of the September 8, 2011 ruling is remote.  The Secretary has filed motions for review of a special master's decision finding

---

[9] Sometimes Currie is cited as Hamilton v. Sec'y of Health & Human Servs.  See, e.g., Hippo v. Sec'y of Health & Human Servs., No. 10-642V, 2012 WL 1658252, at *3 n.7 (Fed. Cl. Spec. Mstr. Apr. 18, 2012).

[10] In addressing the motion for reconsideration, Ms. Lerwick describes the September 8, 2011 ruling finding entitlement as a "decision."  Pet'r's Resp. at 3.  This characterization is erroneous because the September 8, 2011 ruling does not fit the definition of a decision.  It neither awarded nor denied compensation.

entitlement extremely rarely.[11]   Apparently, the Secretary's position is that findings regarding causation, regardless of outcome, are fact-intensive conclusions that should not be appealed.  If the Secretary follows this principle, she will not challenge the finding of entitlement.  Alternatively, if the Secretary intends to file a motion for review of the September 8, 2011 entitlement ruling, there may be advantages to having entitlement issues resolved now before more effort is invested into resolving the amount of compensation.

As noted above, the Secretary argues the award of compensation should be later.  The Secretary advocates that special masters should issue a single (final) decision adjudicating all issues regarding entitlement.  She has presented four factors arguing against an interim award.

## A.   Election about Judgment

An important reason for the Secretary's argument regarding the special master's authority to issue decisions awarding compensation on an interim basis is the obligation to file an election.  This argument is not persuasive for the reasons explained above.

In addition to arguments that special masters lack authority to issue decisions awarding compensation on an interim basis generally, the Secretary's original response brought out concerns specific to Ms. Lerwick.  The Secretary comments that Ms. Lerwick cannot know her total compensation because the element for future medical expenses remains disputed.  The Secretary postulates that since Ms. Lerwick will need to accept the judgment following this decision awarding compensation, she may regret her choice after the next decision awarding compensation for future unreimbursable medical expenses.  Resp't's Resp. at 3-4.

Ms. Lerwick appears not to share the Secretary's concern.  Ms. Lerwick is aware that the amount of compensation for future unreimbursable medical expenses has not been determined.  Ms. Lerwick knows that she does not know everything.  Nevertheless, she stated she intends to accept the judgment(s).  She does not intend to pursue a civil action against the doctor who administered B.L.'s

---

[11] When the court (not special master) has found a petitioner entitled to compensation, the Secretary has appealed to the Federal Circuit infrequently.  See, e.g., Bazan v. Sec'y of Health & Human Servs., 539 F.3d 1347 (Fed. Cir. 2008); Paterek v. Sec'y of Health & Human Servs., No. 2012-5078, 527 Fed. App'x 875 (Fed. Cir. June 19, 2013).

vaccine or the company that manufactured it.  See Pet'r's Reply to Resp't's Opp'n (Pet'r's Reply), filed Dec. 24, 2013, at 2.[12]

## B.    Possible Change in B.L.'s Condition

In her original opposition, the Secretary argued an award of compensation on an interim basis is not appropriate because the amount of the award, despite an ostensible agreement, is subject to change.  Resp't's Resp. at 4-5.  This argument rests in understanding how special masters award compensation in the Vaccine Program.

Until now, special masters have awarded compensation at a single point in time.  The special master's decision is based upon projections about the injured person's future ability and future medical needs.  In the damages phase, the injured person's health may change, making previous projections less reliable and causing updated projections.  See, e.g., Sarver v. Sec'y of Health & Human Servs., No. 07-307V, 2009 WL 8589740, at *8 (Fed. Cl. Spec. Mstr. Nov. 16, 2009).  These changes, typically, constitute relatively minor alterations in the amount of compensation for projected unreimbursable medical expenses.

However, the death of the injured person during the damages phase affects the type of compensation (and, therefore, the amount of compensation) available.  The estate of a person who dies after a vaccine-related injury cannot recover both the death benefit and an award for diminished earning capacity.  Tembenis, 733 F.3d 1190, petition. for cert. filed, 2014 WL 325699 (U.S. Jan. 24, 2014) (No. 13-902).  Citing Tembenis, the Secretary asserted "[i]f an award of future damages is made as part of an interim damages award, and [B.L.] then dies, respondent would be placed in the awkward position of seeking the repayment of that portion of the interim award to the Trust Fund from the petitioner's estate."  Resp't's Opp'n at 5.

---

[12] Ms. Lerwick's promise to accept the interim judgment and the final judgment forecloses the possibility of divided elections and the further possibility of litigation against vaccine manufacturer or vaccine administrator. This representation is in accord with the Federal Circuit's non-precedential order in Tembenis that "once a petitioner has elected to accept the judgment, he or she has accepted it for all compensation purposes relating to that petition." Order, filed May 16, 2013, at 6, Tembenis, No. 2013-5029, (Fed. Cir.), ECF # 28.

The Secretary's argument that Ms. Lerwick should not receive any compensation on an interim basis because B.L.'s condition might change is very narrow.  It concerns only awards for "future damages."  It also concerns a problem that would occur only if B.L. died.

"Future damages" are included in just one part of the three categories of compensation for which Ms. Lerwick seeks an interim award.  To review, she seeks $75,000.00 for past unreimbursed medical expenses, $250,000.00 for past and future emotional distress, and $635,424.00 for diminished earning capacity. Pet'r's Mot. at 5.

For the first element, the past unreimbursed medical expenses, even B.L.'s death would not affect the interim award.  The estate of a person who suffers a vaccine-related injury may recover compensation for unreimbursed medical expenses.  Zatuchni v. Sec'y of Health & Human Servs., 516 F.3d 1312 (Fed. Cir. 2008).

For the second element, an award for past and future pain and suffering, B.L.'s death again would not affect the amount of compensation.  Zatuchni also authorizes a special master to award compensation for a decedent's pain and suffering caused by a vaccine.  516 F.3d at 1318.

The Vaccine Act limits the amount of compensation for emotional distress to $250,000.00 in total (both past emotional distress and future emotional distress). See 42 U.S.C. § 300aa-15(a)(4); Graves v. Sec'y of Health & Human Servs., 109 Fed. Cl. 579 (2013) (discussing statutory cap).  The portion of future emotional distress is subject to a reduction to net present value.  42 U.S.C. § 300aa-15(f)(4); Youngblood v. Sec'y of Health & Human Servs., 32 F.3d 552 (Fed. Cir. 1994).

Here, although the parties have agreed that the amount of compensation for past and future emotional distress is $250,000.00, they have not explicitly divided the award into a portion for past and a portion for future.  Such compartmentalization is not necessary because the undersigned finds that $250,000.00 is a reasonable amount of compensation for B.L.'s nine years of emotional distress.  It is not necessary to consider his future pain and suffering to reach the statutory cap.  Thus, this aspect of compensation does not implicate the Secretary's concern about "future damages."

However, the third category of compensation included in Ms. Lerwick's motion, an award of $635,424.00 for diminished earning capacity, does involve future damages.  As mentioned previously, if B.L. were to die before the final

17

resolution of the case, the administrator of his estate could not be awarded compensation for his diminished earning capacity.  Tembenis, 733 F.3d at 1195.

Tembenis, therefore, suggests that an interim award for diminished earning capacity could cause complications for Ms. Lerwick.  She cannot argue that it would be impossible for B.L. to die unexpectedly.  Although B.L. is expected to live for several decades, see Tr. 1317-18 (Dr. Lubens), a random tragic accident could happen.

The Secretary's motion for reconsideration did not raise any specific challenges to an award for past unreimbursed medical expenses and emotional distress, as opposed to an award for diminished future earning capacity.  The Secretary cites McAllister v. Sec'y of Health & Human Servs., 70 F.3d 1240, 1243 (Fed. Cir. 1995), for the proposition that "compensation in a Vaccine Act case is ordinarily calculated as of the time of the special master's decision that leads to the final judgment in the case."  Mot. for Recons. at 3.  The interim award is consistent with McAllister because, for the reasons explained above, the two components (past unreimbursed medical expenses (through August 2013) and emotional distress) will not change.  Whenever there is a decision awarding Ms. Lerwick compensation, the decision will include those two aspects.

Furthermore, not awarding Ms. Lerwick compensation for B.L.'s diminished earning capacity on an interim basis does not prejudice her significantly.  She will receive compensation for the remaining two items (past unreimbursed expenses as well as past pain and suffering) and this award exceeds $300,000.00.  This amount of compensation should allow her to care for B.L.'s needs until the final decision regarding compensation is issued.

## C.    Complicated Processing

The Secretary also contended that a system in which petitioner receives two or more decisions awarding compensation would complicate the Vaccine Program. The Secretary particularly identified potential problems with obtaining annuity contracts for smaller awards as a concern.  Resp't's Resp. at 5.

The Secretary's concerns about case processing are one factor to consider in balancing whether to issue an order awarding compensation on an interim basis.  If the Department of Justice and the Department of Health and Human Services devoted more resources to Ms. Lerwick's additional (that is, interim) award of compensation, then the resources available for other cases would be slightly diminished.

As discretionary matter, the potential burden of processing decisions awarding compensation on an interim basis imposed upon the government should be compared with the potential benefits. Ms. Lerwick has established that the DTaP vaccine harmed B.L. and he, indisputably, suffers significant medical problems. Ms. Lerwick's unchallenged testimony is that she anticipates losing a large portion of the assistance the State of California provides to her after B.L.'s father pays child support to her. This interim award will alleviate some of her difficulties. Speedily delivering assistance to a needy family is worth the additional inconvenience to the government.

Finally, the Secretary's concern about an annuity would fit more closely in a case involving an annuity as part of an interim award. The present decision for Ms. Lerwick does not contemplate the use of an annuity. She is being awarded compensation for two items (past unreimbursed expenses and emotional distress) that are typically paid in a lump sum. Therefore, an interim award to Ms. Lerwick will not impair the Secretary's ability to purchase an annuity contract for future payments to her.

### D.    Subject to Appeal

The respondent's final argument was an argument that an award of compensation on an interim basis will be self-defeating. Ms. Lerwick has requested an award on an interim basis to speed her receipt of money. The Secretary contends that an interim award to her will actually delay her receipt of compensation because the Secretary could file a motion for review. Resp't's Resp. at 5-6.

In the Secretary's view, a motion for review would delay the case in two respects. The first is that a motion for review challenging this decision, which awards compensation on an interim basis, would preclude an immediate entry of judgment in Ms. Lerwick's favor. The judgment would not be issued until a judge of the Court of Federal Claims acted on the motion for review. And following that order, the aggrieved party could appeal to the Federal Circuit.

The additional procedure to confirm the availability of compensation on an interim basis presents a very real concern. Each party's determination to pursue a stage or two stages of appellate review will affect how quickly Ms. Lerwick actually receives money. It may turn out that Ms. Lerwick would have received money more quickly if she had not asked for an interim award. But, as long as there is no precedential ruling from the Federal Circuit, this concern will always be

present.  In replying to the Secretary's arguments, Ms. Lerwick seems to indicate that she is willing to take the risk that a motion for review and an appeal may delay her receiving compensation on an interim basis.  Moreover, even after the Secretary filed a motion for reconsideration, a submission that evidences some dissatisfaction on the government's part and may hint at the increased likelihood of a motion for review, Ms. Lerwick maintained her desire for an award of compensation on an interim basis.

The second part of her case that could be delayed, in the Secretary's view, is the final award of compensation.  The Secretary asserted that if she were to file a motion for review contesting the interim award, then the special master would "lose jurisdiction to continue working on other damages issues."  Resp't's Opp'n at 5.  For this argument, the Secretary cited no cases in support.

Also without citing any cases, Ms. Lerwick responded.  She argued that a motion for review challenging a decision awarding attorneys' fees and costs on an interim basis does not deprive special masters from jurisdiction "to resolve issues not resolved in the decision which is the subject of the motion for review."  Pet'r's Reply at 4.

The Secretary's argument remains based upon an event that may or may not happen.  If the Secretary were to file a motion for review and if she were intent upon slowing adjudication of the attendant care and residential placement issues, she could file a motion with the judge to whom the motion for review is assigned. (Such a motion, presumably, would cite to legal authorities discussing the relationship between appellate and trial tribunals.)  Consequently, the suggestion that a motion for review may delay resolution of all the damages issues is still not a persuasive reason for denying Ms. Lerwick compensation on an interim basis.

Conclusion

Ms. Lerwick established that she is entitled to compensation in the September 8, 2011 Ruling on Entitlement.  She has further established that compensation for two items, unreimbursed medical expenses through August 30, 2013 and pain and suffering, totals $325,000.00.  She also has established that future events will not affect the amount of the awards for these two items.

There is no just reason to delay the entry of judgment on these two items. **Therefore, in the absence of a motion for review filed under RCFC Appendix B, the clerk of court shall enter judgment in Ms. Lerwick's favor for $325,000.00 in interim compensation**.

**IT IS SO ORDERED.**

<u>s/ Christian J. Moran</u>
Christian J. Moran
Special Master