# In the United States Court of Federal Claims

No. 06-847V
(Filed Under Seal: January 30, 2015)
(Reissued for Publication: February 18, 2015)[1]

```
*************************************
SHERRY LERWICK, legal representative  *
of a minor child, B.L.,               *
                                      *
                                      *   Vaccine Act; Motion for Review;
              Petitioner,             *   Compensation for Attendant Care
                                      *
v.                                    *
                                      *
SECRETARY OF HEALTH AND               *
HUMAN SERVICES,                       *
                                      *
              Respondent.             *
*************************************
```

Curtis R. Webb, Twin Falls, ID, for petitioner.

Darryl R. Wishard, United States Department of Justice, Washington, DC, for respondent.

**OPINION AND ORDER**

**SWEENEY**, Judge

      Petitioner Sherry Lerwick seeks an adjustment of the compensation awarded to her by the special master under the National Childhood Vaccine Injury Act of 1986 ("Vaccine Act"), 42 U.S.C. §§ 300aa-1 to -34 (2012), for the ongoing treatment and care of her minor child, B.L. That compensation award included the costs for an attendant to assist petitioner in caring for B.L.; specifically, the special master awarded petitioner an amount sufficient to pay for eight hours of care per day from a licensed vocational nurse ("LVN"), and additional hours of care per day from a home health aide ("aide"). Petitioner contends, however, that the attendant care that B.L. requires can only be provided by an LVN, and that the special master's failure to account for this fact in his decision awarding compensation was arbitrary and capricious. For the reasons set

---

     [1] Vaccine Rule 18(b), contained in Appendix B of the Rules of the United States Court of Federal Claims, affords each party fourteen days in which to object to the disclosure of (1) trade secrets or commercial or financial information that is privileged or confidential or (2) medical information that would constitute "a clearly unwarranted invasion of privacy." Neither party objected to the public disclosure of any information contained in this opinion.

forth below, the court denies petitioner's motion for review and sustains the decision of the special master.

## I. BACKGROUND

B.L., who is currently ten years old, suffers from severe cerebral palsy and treatment-resistant epilepsy, and as a result, requires assistance with all activities of daily living.[2] In a September 8, 2011 decision, the special master found that B.L.'s profound neurological disabilities were the result of vaccine-caused acute disseminated encephalomyelitis, and that petitioner was therefore entitled to compensation under the Vaccine Act.

To assist them in assessing the amount of compensation that would be necessary for the continued treatment and care of B.L., the parties retained life care planners, consulted with various other individuals, and gathered supporting documentation. Ultimately, the parties were able to agree on all but two elements of compensation. One dispute concerned where B.L. should reside, and the other dispute concerned the amount and type of attendant care that B.L. should receive. It is this second dispute that provides the basis for petitioner's motion for review.

B.L. currently receives attendant care through several programs administered by the State of California. Under two of those programs, the state provides B.L. with approximately forty hours per week of care from an LVN (in addition to the care that he receives from an LVN while at school). The LVN provides skilled care, and may, among other things, administer medications to B.L. and suction B.L.'s airway in response to aspiration. Under a third program, petitioner receives funds sufficient to pay for approximately thirty-six hours per week of unlicensed care for B.L. An unlicensed individual, such as an aide, can provide nonskilled care, such as repositioning, grooming, and bathing, but cannot perform skilled tasks, such as administering medication or suctioning an airway. Petitioner uses the funds provided by the state to pay herself to care for B.L.

Petitioner's position before the special master was that B.L. should receive care from an LVN twenty-four hours per day, every day. In support of her position, petitioner noted that some of the care that B.L. requires–medications and suctioning–can only be provided in her absence by a licensed health care professional. Respondent, in contrast, asserted that LVN care should be limited to eight hours per day, and that additional care could be provided by an aide.

---

[2] The court derives most of the facts and procedural history in this section from the special master's decision regarding compensation and the exhibits referenced in that decision. See generally Lerwick v. Sec'y of HHS, No. 06-847V, 2014 WL 3720309 (Fed. Cl. Spec. Mstr. June 30, 2014). The court derives additional facts and procedural history from the special master's decision awarding compensation. See generally Lerwick v. Sec'y of HHS, No. 06-847V, 2014 WL 4403044 (Fed. Cl. Spec. Mstr. Aug. 15, 2014). All of the facts in this section are undisputed.

Specifically, respondent proposed that B.L. should receive four hours of aide care per day through age twelve, six hours of aide care per day between ages thirteen and eighteen, eight hours of aide care per day between ages nineteen and twenty-two, and live-in aide care until age twenty-four.[3]  Respondent's proposal was based on, and improved upon, the level of attendant care that B.L. currently receives.

The special master evaluated the evidence presented by the parties and, in a June 30, 2014 decision, concluded that petitioner had not established that B.L. should receive around-the-clock care from an LVN.  Instead, the special master found that the attendant care plan proposed by respondent would satisfy B.L.'s needs.  In other words, the special master determined that petitioner should receive compensation sufficient to pay for eight hours of LVN care per day, at $37 per hour, and four (then six, then eight) hours of aide care per day, at $18 per hour.[4]

With the outstanding compensation issues resolved, the only step remaining was the finalization of the award of compensation to petitioner.  At the special master's direction, respondent submitted a proffer regarding compensation–reflecting petitioner's agreement–that incorporated the special master's decision on the two disputed elements of compensation.  In an August 15, 2014 decision, the special master awarded petitioner the compensation described in the proffer and directed the entry of judgment.

One month later, petitioner filed a motion for review of the special master's decision awarding compensation.  Her sole objection to the decision relates to the compensation that the special master awarded for aide care.  Petitioner does not object to the number of hours designated for aide care; rather, she contends that those hours should be compensated at the LVN rate of $37 per hour.  Petitioner argues that care from an LVN is necessary during these hours because the parties agreed that all care should be provided by a home health agency, and such an agency would refuse to send an aide to care for an individual with B.L.'s needs.  Respondent opposes petitioner's motion, and the court heard argument on January 28, 2015.

## II. DISCUSSION

The United States Court of Federal Claims possesses jurisdiction to review the record of the proceedings before a special master, and upon such review, may:

> (A)  uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

---

[3] In the portion of his decision not challenged by petitioner, the special master ruled that B.L. should receive live-in aide care beginning at age twenty-three and lasting for the remainder of his life.  See Lerwick, 2014 WL 3720309, at *19.

[4] Compensation for the live-in aide who would help care for B.L. after he reached the age of twenty-three would be based on a daily, not an hourly, rate.

> (B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or
>
> (C) remand the petition to the special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa-12(e)(2). In the instant case, petitioner argues that the special master's decision not to compensate all of the attendant care hours at the LVN rate of $37 per hour was arbitrary and capricious. The "arbitrary and capricious" standard "is a highly deferential standard of review. If the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." Hines v. Sec'y of HHS, 940 F.2d 1518, 1528 (Fed. Cir. 1991); accord Lampe v. Sec'y of HHS, 219 F.3d 1357, 1360 (Fed. Cir. 2000) ("The arbitrary and capricious standard of review is difficult for an appellant to satisfy with respect to any issue . . . .").

### A. The Evidence Before the Special Master

As previously noted, petitioner's position that all attendant care hours should be compensated at the LVN rate of $37 per hour is based on her contention that a home health agency would refuse to send an aide to care for an individual with B.L.'s needs. This contention rests on three undisputed facts that are amply supported in the record. First, B.L.'s attendant care should be provided through a home health agency. Tr. 1231 (Woodard), 1560 (Fox). Second, in California, aides are not permitted to perform functions that must be performed by a licensed health care professional, such as administering medication and suctioning an airway. Pet'r Ex. 115 at 19; accord Resp't Ex. H; Tr. 1560 (Fox), 1588 (Woodard). And third, the home health agency currently providing attendant care for B.L.–Premier Healthcare Services–only provides care from an LVN, who is supervised by a registered nurse ("RN"). Pet'r Ex. 107 at 10; Pet'r Ex. 134 at 4; accord Tr. 1112 (Lerwick).

From these three undisputed, well-supported facts, petitioner reasons that only an LVN can provide the care that B.L. needs. This conclusion, petitioner asserts, is further supported by other evidence in the record. For example, petitioner cites a letter from another home health agency, Maxim Healthcare Services, which provides:

> Based on our clinical assessment of [B.L.], Maxim will recommend if necessary to his primary care physician[] that his home health service provided to him by a home health care agency be provided by a Licensed Vocational Nurse (LVN) or a provider with greater skill and licensure[] (such as a Registered Nurse). [B.L.]'s seizure activity and risk of aspiration during feedings require continuous monitoring. Moreover, he has medications which require daily administration and also as needed for prolonged seizure activity. Based on the foregoing, at this time

> [B.L.]'s care should be provided by either his parent, a licensed vocational nurse or provider with greater skill and licensure.

Pet'r Ex. 113 at 2; see also Tr. 1596-97 (Woodard) (noting that "in most states," only a parent or a nurse can administer seizure medications).  Petitioner also relies on the testimony of a pediatric neurologist retained by respondent, Perry R. Lubens, MD.  Dr. Lubens testified that only an LVN can administer medication to B.L.  Tr. 1278 (Lubens).  However, it bears noting that Dr. Lubens made this statement while expressing his agreement with the attendant care plan proposed by respondent's life care planner, Laura E. Fox, MSN, RN, as the following excerpt from the hearing transcript demonstrates:

> Q. . . . Ms. Fox has recommended nursing care for now through age twelve at eight hours per day.
>
> A. Correct.
>
> Q. And then aide-level care at four hours per day–
>
> A. Correct.
>
> Q. –for a total of twelve hours.
>
> . . . .
>
> Q. . . . [A]re those care recommendations consistent with a child with [B.L.]'s needs?
>
> A. I think so, yes.
>
> Q. Why?
>
> A. Well, first of all, I think . . . he's getting this kind of LVN care now, and he's . . . getting the LVN care during the day when he takes his medication. . . . I think that it's reasonable to give him LVN care, especially if he goes through an agency, because no other care provider could give him medication except an LVN-level person. . . .
>
> Q. . . . [W]hat level of care would you recommend for the remaining twelve hours?
>
> A. I think that he needs somebody that's attentive to his care, a parent substitute.  It has to be a responsible adult.  It has to be somebody who understands his problems.  It has to be somebody that's going to be available to take care of him.

5

> But I don't think it needs to be a licensed person. It needs to be a responsible
> adult who understands [B.L.]'s problems.

Id. at 1277-78 (Lubens). In other words, Dr. Lubens recognized both that some tasks necessary for the care of B.L. would need to be performed by an LVN, and that the aide care recommended by Ms. Fox for B.L. was appropriate.

Finally, petitioner relies on the testimony of her life care planner, Helen M. Woodard, MA. In response to a question regarding the need for the around-the-clock LVN care that she recommended in her life care plan, Ms. Woodard stated: "If [B.L.] gets his care through a home health agency, they will send only licensed care providers, because he has to have medication. He has to be assessed. He has to be given as-needed medication. And they can't send unlicensed people to do that." Id. at 1231 (Woodard); accord id. at 1576 (Woodard) ("An agency wouldn't send an aide if the mother wasn't going to be at home. And in all likelihood, they wouldn't staff [B.L.] with an aide even then."); see also id. at 1231 (Woodard) (explaining that by "licensed," she meant an LVN or RN). Ms. Woodard further testified: "[I]f somebody is sent from a home health agency to do this care, it has to be from an LVN. They will not send–and I think everyone agrees–they are not going to send an aide to administer medications or do suctioning . . . ." Id. at 1588 (Woodard).

Respondent acknowledges that B.L.'s attendant care should be provided through a home health agency, that an aide cannot administer medication or suction an airway, and that B.L.'s current home health agency only provides care for B.L. using an LVN and an RN. However, respondent contends that the evidence in the record does not support petitioner's contention that a home health agency would not provide an aide to help care for B.L.

In support of her position, respondent notes that aide care is available from home health agencies in California. See Resp't Ex. H.[5] Respondent further relies on Ms. Fox's life care plan and testimony. In developing her recommendations for the amount and types of attendant care that B.L. would need in the future, Ms. Fox considered the amount and types of attendant care that B.L. currently receives from the State of California. Tr. 1516-17, 1520-21 (Fox). She testified that B.L.'s current attendant care plan reflects a determination that B.L. requires care from an LVN when petitioner is not present, but that when B.L. is at home with his family, the presence of an LVN is not necessary because family members can administer his medications and suction his airway. Id. at 1519 (Fox); accord Pet'r Ex. 107 at 10 (noting that petitioner would "provide all care, including medications and treatment, when Premier Health Services employee is not on duty"). Accordingly, in her life care plan, Ms. Fox recommended that only some of

---

[5] In her response to petitioner's motion for review, respondent asserts that the websites of Premier Healthcare Services and Maxim Healthcare Services reflect that aide care is available from home health agencies in California. However, because there is no indication that the content of these websites was before the special master when he rendered his decision, the court will not consider them.

6

B.L.'s attendant care be provided by an LVN, and that other attendant care could be provided by an aide. Resp't Ex. L at 1-3; see also Tr. 1519 (Fox) (remarking that the "majority" of B.L.'s care "can be done by an aide"). In both her life care plan and her testimony, Ms. Fox indicated that all of the attendant care that she recommended for B.L., whether from an LVN or from an aide, should be provided through a home health agency. Tr. 1289 (respondent's counsel) (relaying Ms. Fox's statement that her life care plan was "based on cost and care provided through an agency"), 1560 (Fox) (agreeing that all of the aide-level care that she recommended should be provided through an agency).

### B. The Special Master's Decision Was Not Arbitrary or Capricious

As reflected in his comprehensive, well-written decision, the special master considered the evidence presented by the parties in support of their positions on B.L.'s attendant care needs. See, e.g., Lerwick, 2014 WL 3720309, at *4, 6-7, 13. Upon reviewing that evidence, the special master rejected petitioner's contentions that B.L.'s seizures, risk of aspiration, and risk of skin infections required around-the-clock care from an LVN, id. at *8-13, and instead found that the attendant care plan proposed by respondent–amended to provide B.L. with a live-in aide past age twenty-four–would satisfy B.L.'s current and future needs, id. at *13. In discussing respondent's plan, which was prepared by Ms. Fox, the special master explained:

> The starting point for Ms. Fox is the level of care that B.L. is receiving from various California programs. Because Ms. Fox concluded that B.L.'s 2013 care plan was reasonable, her goal was either to continue that plan or to increase it. Under B.L.'s current plan, an LVN needs to be present for B.L. when Ms. Lerwick is absent because B.L. may need medication. But, when Ms. Lerwick is with B.L., there is a need for support services only. If B.L. needs medication, Ms. Lerwick can provide it to her son.

Id. at *6 (citations omitted). The special master further remarked on the attendant care that B.L. receives through the State of California, which formed the basis of respondent's plan:

> California does not currently provide an LVN to watch B.L. 24 hours per day. If B.L. required continual monitoring from a licensed nurse, then it seems likely that the plan of care developed through the California Regional Centers would have given Ms. Lerwick this assistance. Instead, California is providing 170 hours of LVN assistance per month, and approximately 195 hours of aide-level care. With approximately 12 hours of assistance per day, B.L. has done about as well as possible. . . .
>
> California's provision of LVN care plus aide care is influential. By all accounts, California has established an admirable system to care for developmentally disabled individuals. Ms. Fox testified about the California system and Ms. Woodard did not contradict Ms. Fox's assessment.

Id. at *7-8 (footnote and citations omitted). And, the special master found Ms. Fox to be "particularly knowledgeable because she is a nurse licensed in California and has supervised home health aides in California." Id. at *7.

There is sufficient evidence in the record to support the special master's acceptance of respondent's attendant care plan. Although an LVN must provide some of B.L.'s care, the evidence reflects that much of the assistance that B.L. requires could be provided by an aide. Ms. Fox testified that the aide care that she recommended for B.L. was to be provided by a home health agency, and as a nurse licensed in California who has supervised aides, she would know whether a home health agency could provide an aide to help care for B.L. Indeed, it would be illogical and irresponsible for Ms. Fox, an experienced life care planner and registered nurse, to recommend an attendant care plan for B.L. that included the use of an aide supplied by a home health agency if she knew that a home health agency would decline to provide an aide to help care for B.L. Given this evidence, it is of no consequence that neither Ms. Fox, nor any other witness, affirmatively testified that a home health agency would supply an aide to care for B.L.

Petitioner has cited only one piece of evidence that supports her position that a home health agency would refuse to provide an aide to help care for B.L.: Ms. Woodard testified that "in all likelihood," a home health agency would not "staff [B.L.] with an aide" even if petitioner were present to supervise the aide. Tr. 1576 (Woodward). The phrase "in all likelihood" is not equivalent to the words "must" or "required." The remaining evidence that petitioner relies upon reflects only that a home health agency would not send an aide to administer medications to B.L. or to suction B.L.'s airway. See, e.g., id. at 1231 (Woodard), 1278 (Lubens), 1588, 1596-97 (Woodard); Pet'r Ex. 113 at 2. Thus, it was not error for the special master to credit Ms. Fox's testimony and life care plan over the evidence cited by petitioner. The special master considered the relevant evidence, drew the plausible inference that a home health agency would provide both LVN care and aide care for B.L., and articulated a rational basis for his decision to award petitioner compensation based on respondent's attendant care plan, which provided for a combination of LVN care and aide care for B.L. Accordingly, the special master's decision was not arbitrary or capricious.

### III.  CONCLUSION

For the reasons stated above, the court **DENIES** petitioner's motion for review and **SUSTAINS** the decision of the special master. The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge